UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

DEBRA FEE

Plaintiff,

-against-

TOWN OF HEMPSTEAD, TOWN OF HEMPSTEAD HIGHWAY DEPARTMENT, THOMAS TOSCANO, ANTONIO FANIZZI, CHRISTOPHER FOLEY, JAMES McCLINIC (in his individual and official capacities) and JEROME FERGUSON (in his official and individual capacities),

Defendants.

-----------------------------------------------------------------------X

17-CV-5410 (AYS)

DEFENDANT'S RULE 50 JUDGMENT AS A MATTER OF LAW

## PRELIMINARY STATEMENT

For efficiency, Defendants acknowledge that the Court has already addressed the Rule 50 standard and has directed the parties to proceed directly to the substance of the motion.

Defendants respectfully renew their motion for judgment as a matter of law under Rule 50(a). Plaintiff has now been fully heard, and even viewing the evidence in her favor, the trial record does not provide a legally sufficient basis for a reasonable jury to find for her on the claims addressed below.

## I. THE TOWN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW UNDER THE EQUAL PAY ACT

Plaintiff failed to establish that she was paid less than a male employee who performed substantially equal work requiring substantially equal skill, effort, and responsibility under similar working conditions. The Equal Pay Act requires substantial equality in actual job content; selected overlapping tasks or general similarity are insufficient. See *Belfi v. Prendergast*, 191 F.3d 129, 135-36 (2d Cir. 1999); *Lavin-McEleney v. Marist College*, 239 F.3d 476, 480-81 (2d Cir. 2001). The Equal Pay Act

claim fails because none of Plaintiff's proposed comparators performed substantially equal overall work, and Brian Wilson—the male employee whose circumstances were closest to Plaintiff's—remained a Laborer I for approximately fourteen years before promotion. Further, The Equal Pay Act requires a comparison of the actual content of the employees' jobs. Generalized descriptions of common tasks do not establish substantial equality where the jobs differ in responsibility, experience, specialization, or supervision. *EEOC v. Port Authority of New York & New Jersey*, 768 F.3d 247, 255–56 (2d Cir. 2014).

***A. Sharma was not a substantially equal comparator.***

Plaintiff's Exhibit 79 is Fee's roster card and Plaintiff's Exhibit 97 is Sharma's roster card. Those exhibits show that Fee earned more than Sharma during the period surrounding her 2016 title application and throughout 2017. Fee earned $45,287 compared with Sharma's $44,225 in July 2013 and earned $66,346 compared with $58,607 in April 2017.

The records reflect a brief interval in 2014 when Sharma's listed rate was approximately $376 higher. That limited difference is insufficient unless Plaintiff also proved substantially equal work.

> Q. "What is your current position?"
> A. "Maintenance mechanic 2."
> Q. "When you started with the Town of Hempstead, what was your title?"
> A. "Same."
> *Sharma, Tr. 53.*
> Q. "During that time period, did you have occasion to work with a woman by the name of Debra Fee?"
> A. "This is the first time I'm hearing the name. I never met that woman. I never saw that woman."
> *Sharma, Tr. 75:12-15.*

Sharma was hired directly into the skilled Maintenance Mechanic II title and never worked with Plaintiff. His testimony showed some overlap in receiving, shelving, and distributing parts, but not substantial equality in the overall skill, effort, responsibility, or working conditions of their jobs.

***B. Bello was not a substantially equal comparator.***

Bello's testimony established material differences in seniority, mechanical training, licensing, field experience, equipment operation, and supervisory responsibility. He began Town employment on April 13, 1984, approximately twenty-two years before Fee, and began stockroom work in April 1996, approximately ten years before Fee was hired. Tr. 390:20-25.

> Q. "What was your course or major at that time?"
> A. "Diesel, diesel mechanics."
> Q. "It says two years here. Would that be accurate?"
> A. "Yes."
> *Bello, Tr. 419:15-21.*

Bello also testified that he graduated from a BOCES automotive and auto-body program. Tr. 419:23-420:6.

> Q. "You were in the road crew, basically?"
> A. "Yes."
> Q. "And you also drove trucks over 18,000 pounds?"
> A. "Yes."
> Q. "Did you have to have a specific license for that?"
> A. "I had a Class 3. I believe it was a Class 3."
> *Bello, Tr. 421:2-12.*

Bello further testified that he operated a payloader, repaired sidewalks, constructed handicap ramps, performed leaf-removal work, and plowed, sanded, and salted streets. Tr. 420:11-23, 423:15-424:2.

> Q. "It says, assign and supervise work crew. Did you do that?"
> A. "Yes."
> Q. "You also participate in planning work --"
> A. "Yes, planned the work for the day to see what we have to do."
> *Bello, Tr. 421:24-422:5.*
> Q. "Patrick Bello ... was a grade 15, right? He was a labor crew chief 2?"
> A. "Correct."
> Q. "And he came in off of a road crew because he had had some medical issues, correct?"
> A. "Correct."
> *Fee, Tr. 635:1-6.*
> Q. "And he was doing pretty much the same thing you were doing, correct?"
> A. "No. He was on the auxiliary side."
> *Fee, Tr. 635:24-636:1.*

These are not minor differences. Bello had decades more seniority, specialized mechanical training, a heavy-truck license, extensive road and seasonal field experience, equipment-operation experience, and actual crew-supervision duties.

***C. Foley was not a substantially equal comparator.***

> A. "Before I got hired in the job, I possessed a CDL Class B license, and one of the requirements is having a CDL Class B license. And I was driving trucks, plowing, and stuff like that."
> *Foley, Tr. 119:20-120:1.*
> Q. "Did you ever have occasion to use your CDL?"
> A. "No."
> Q. "Was there a reason you obtained the CDL?"
> A. "To get my raise."
> *Fee, Tr. 625:24-626:2.*
> Q. "You supervised the activities of laborers and other assigned personnel. Did you do that?"
> A. "Yes."
> Q. "Did you have responsibility for supervising Ms. Fee?"
> A. "Yes."
> *Foley, Tr. 233:6-18.*
> Q. "Ability to effectively supervise laborers performing routine manual tasks. Did you do that?"
> A. "I didn't have a need to. There was nobody else there."
> *Fee, Tr. 640:1-4.*

Here, Foley's position included actual CDL use, road and equipment work, crew direction, and formal supervisory responsibility that Plaintiff did not perform. Plaintiff also testified that she never worked with Foley in the stockroom. Tr. 634:4-6. See *Belfi v. Prendergast.*

***D. Brian Wilson's employment history undermines Plaintiff's Equal Pay Act theory.***

Brian Wilson is the male employee whose employment circumstances were closest to Plaintiff's because he was also a Laborer I. Wilson began his employment as a seasonal Laborer I in 2007, later became a part-time Laborer I, and ultimately became a full-time Laborer I, Grade 9. He remained a Laborer I while performing varied duties, including road-crew work and later office and time-and-attendance functions.

Wilson was not promoted to Labor Crew Chief I until December 8, 2021, approximately fourteen years after he first entered Town employment as a Laborer I. His history demonstrates that a male Laborer I could perform varied or expanded duties for years without receiving an immediate promotion or higher title. That history undermines any inference that Plaintiff's title or pay resulted from her sex.

***E. Plaintiff cannot construct a composite comparator.***

Plaintiff's proof attempts to combine Sharma's parts-related work, Bello's title and stockroom history, and Foley's supervisory role. The Equal Pay Act requires one actual male employee whose own overall work was substantially equal. Plaintiff cannot assemble a hypothetical comparator from selected aspects of several employees. See *Belfi.*

***F. Any limited wage difference resulted from factors other than sex.***

> Q. "Is it your belief, as you sit here today, that you're paid in accordance with that salary schedule?"
> A. "Yes."
> Q. "Again, that salary schedule is negotiated between your union and the Town?"
> A. "The Town of Hempstead, yes."
> *Sharma, Tr. 95:3-11.*

The record identifies Civil Service title, grade, negotiated step, seniority, education, mechanical training, CDL and heavy-equipment qualifications, road experience, and supervisory responsibility as factors other than sex. Hence, Defendant requests the Court to enter judgment as a matter of law for the Town on the Equal Pay Act claim. *Id. EEOC v. Port Authority of New York.*

## II. DEFENDANT McCLENIC IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE SECTION 1983 SEXUAL-HARASSMENT CLAIM

Plaintiff failed to establish that Defendant James McClenic acted under color of state law in connection with the alleged sexual harassment.

"[T]o find an individual liable, Mr. McClenic, for sexual harassment, he does have to have acted under color of state law and to do that he had to either be a supervisor or act in some supervisory authority over Ms. Fee." *Court, Tr. 688:5-10.*

Q. "When Fee worked with you those five times, were you her supervisor?"
A. "No, I was just a driver."
Q. "At any time ever, were you Fee's supervisor?"
A. "Never."
*McClenic, Tr. 491:10-14.*

No witness testified that McClenic had authority to hire, fire, discipline, evaluate, promote, transfer, set compensation, approve leave, determine assignments, or otherwise alter a term or condition of Plaintiff's employment. McClenic also testified that he did not obtain his Grade 13 crew-chief title until approximately two years before trial, years after the alleged 2019 conduct. Tr. 462:1-4.

The pleadings are consistent with the trial record. The Second Amended Complaint identifies McClenic as a Town employee, and the factual theory presented at trial described him as the driver when he and Plaintiff were assigned together. It did not identify him as Plaintiff's supervisor or as a policymaker.

Even crediting Plaintiff's account of the alleged photographs and exposure, the evidence describes alleged misconduct by a coworker and driver. It does not show conduct accomplished through supervisory authority or another power conferred by the State. Further, Plaintiff's Second Ammended Complaint referred to McClennic as an employee and a driver.

Hence, the Defendants requests the Court to enter judgment as a matter of law for McClenic on the Section 1983 sexual-harassment claim.

## III. THE SECTION 1983 GENDER-DISCRIMINATION THEORIES FAIL BECAUSE THE CIVIL SERVICE DECISION WAS BASED ON PLAINTIFF'S ACTUAL DUTIES, NOT HER SEX

Plaintiff failed to present legally sufficient evidence that the denial of her requested title was motivated by sex. The trial record instead shows that Civil Service conducted a duty-based review,

considered an onsite investigation, compared Plaintiff's work with the applicable title specifications, and concluded that she was performing work within the Laborer I title.

> Q. "Specifically concerning Ms. Fee, did you review her application?"
> A. "Yes. I did."
> Q. "And what was your determination?"
> A. "I rejected it."
> Q. "And what was the reasons why you rejected her application?"
> A. "Because I don't think she was working out of title."
> *Schmidt, Tr. 308:4-13.*

Schmidt's testimony was significant because he explained that the classification inquiry focused on the work being performed, not on the employee's sex. When the application contained conflicting descriptions of Plaintiff's duties, Civil Service did not simply accept Plaintiff's account or the department's account. It relied on an onsite review and compared the reported work with the applicable Civil Service specifications.

The evidence showed that Plaintiff distributed, purchased, and inventoried parts, supplies, and equipment and that she worked alone in the stockroom. Schmidt explained, however, that working alone did not make Plaintiff a supervisor. The Storeyard Crew Chief title involved substantial supervisory responsibility, while Plaintiff supervised no employees. Her stockroom duties - receiving items, shelving and retrieving them, maintaining inventory, and providing materials to mechanics - were duties Civil Service determined were consistent with Laborer I work.

Plaintiff introduced testimony that she assumed significant responsibilities after Denise Miller's stroke. That evidence may support the proposition that Plaintiff performed important stockroom work. It does not rebut the Civil Service distinction between performing stockroom functions and supervising employees as a Storeyard Crew Chief.

> A. "He didn't -- he didn't say much about, well, men are -- he didn't say that. So, no, he didn't really respond anything to me other than, you know, you could -- you could work your title, then."
> *Fee, Tr. 545:2-7.*

No decisionmaker stated that women should not receive the requested title, that the position was reserved for men, or that Plaintiff's application was denied because she was female. Brian Wilson's history further defeats an inference of intentional gender discrimination: Wilson was male, held the same Laborer I title, and remained in that title for approximately fourteen years before receiving a promotion.

There is also no evidence that McClenic participated in the Civil Service determination, that Ferguson caused the denial, or that Foley made the classification decision. Section 1983 liability must rest on each defendant's personal involvement and cannot be imposed collectively.

To the extent any municipal Section 1983 theory remains, Plaintiff presented no evidence of a discriminatory Town policy, widespread custom, final-policymaker directive, or deliberately indifferent failure that caused the alleged constitutional violation.

Hence, the Defendants requests the Court to enter judgment on the individual Section 1983 gender-discrimination theories and exclude any remaining municipal Section 1983 theory from the verdict sheet.

## IV. THE TOWN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE TITLE VII HOSTILE-WORK-ENVIRONMENT CLAIM

Plaintiff failed to establish a legally sufficient basis to impute McClenic's alleged conduct to the Town. Defendants do not ask the Court to decide whether the alleged conduct occurred or whether it was severe or pervasive. Even crediting Plaintiff's account, McClenic was a coworker, not a supervisor.

> Q. "And that is a training acknowledgment form, correct?"
> A. "Yes."
> Q. "And it says that you ... attended a training seminar ... including the Town's prohibition against discrimination and sexual or other harassment, correct?"
> A. "Yes."
> *Fee, Tr. 621:6-15.*

While reviewing the Town's discrimination and harassment complaint-reporting procedure, Plaintiff acknowledged that she could have made a complaint to Mr. Sammon and 'to a lot of people.'

Tr. 623:17-20. She further acknowledged that she could have complained to people above her and to the Town Attorney's Office. Tr. 623:21-25, 624:13-16.

> Q. "And when did she tell you about that incident?"
> A. "I don't know, after it happened, of course. But I just don't know when."
> *Dahlem, Tr. 783:15-17.*

Dahlem's testimony did not establish when the report was made, what was reported, whether she remained a supervisor at the time, or whether the Town had an opportunity to respond.

> Q. "When did you learn that?"
> A. "When we were doing the depositions."
> Q. "Was that before or after she was terminated?"
> A. "After she was terminated."
> *Fanizzi, Tr. 847:14-18.*

The record therefore does not show a timely complaint to responsible management followed by an inadequate response, nor does it show a widespread, openly tolerated sexualized workplace. Hence, the Defendants requests the Court to enter judgment as a matter of law for the Town on the Title VII hostile-work-environment claim.

## V. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE TITLE VII AND NYSHRL RETALIATION CLAIMS.

Plaintiff failed to establish that protected activity caused the Civil Service determination, the road assignment, or her termination. The title application was principally a classification and compensation request.

> Q. "And what did you tell him about why you were making this application?"
> A. "Because I needed the money. I'm living on Long Island making, like, 40-something thousand dollars and that doesn't pay for your -- anything."
> *Fee, Tr. 544:16-20.*

Plaintiff also testified that she referred to male employees when speaking with Toscano. That evidence may support protected activity as to Toscano, but it does not establish that every later

decisionmaker understood the title application or counsel's involvement as opposition to unlawful sex discrimination.

Schmidt's testimony separates the Civil Service determination from any alleged retaliation. Civil Service reviewed Plaintiff's actual duties and rejected the application because it concluded that she was not working out of title. The evidence did not show that Schmidt knew of any sex-discrimination complaint, considered any protected activity, directed Plaintiff's road assignment, or recommended that she be moved.

That separation is important. Plaintiff cannot infer retaliation merely from the sequence of a failed desk audit followed by a road assignment when Civil Service did not order or recommend the assignment. The classification decision also supplied a nonretaliatory context for assigning Plaintiff Laborer I work: she remained classified as a Laborer I.

The termination theory is still more remote. The termination occurred almost three years after the 2016 application and followed a separate July 26, 2019 workplace incident.

> Q. "Did a Town attorney investigator speak with you regarding what happened on July 26th?"
> A. "Yes, he did."
> Q. "Did Mr. Costales ask you to write a statement with regard to what happened on July 26th?"
> A. "Yes."
> *Fee, Tr. 698:9-22.*

Plaintiff's written statement was admitted as Defense Exhibit XX.

> Q. "Did you say in front of Mr. Peretta why do I always have to ride with black people?"
> A. "I said that in front of Jack Peretta. I was repeating --"
> *Fee, Tr. 700:13-22.*

Plaintiff's explanation must be credited. Even under her account, however, the record establishes a separate intervening workplace incident that triggered a Town investigation.

> Q. "After the investigation, you were issued ... a notice of discipline and charges at the end of September, correct?"
> A. "Yes."
> Q. "And you were terminated from the Town, correct?"

A. "Yes."
*Fee, Tr. 701:4-9.*

The trial record thus establishes an intervening incident, an investigation, Plaintiff's written statement, formal disciplinary charges, and termination. No witness connected that process to Plaintiff's 2016 title request, her gender, or protected opposition to sex discrimination.

Hence, the Defendants requests the Court to enter judgment on the Title VII and NYSHRL retaliation claims. At minimum, remove the termination-based retaliation theories from the verdict sheet.

## VI. THE TOWN IS ENTITLED TO JUDGMENT ON THE TITLE VII GENDER-DISCRIMINATION, FAILURE-TO-PROMOTE, AND UNEQUAL-TERMS THEORIES.

Plaintiff failed to present legally sufficient evidence that sex motivated the denial of her requested title or the later assignment of Laborer I duties. Defendants assume for purposes of this motion that those actions caused some employment harm. The missing requirement is discriminatory motive.

A. "Because the job she was doing was not the job of a laborer 1. She was doing the store yard crew chief job, especially after Denise Miller ... had the stroke on the job, and then Ms. Fee took over."
*Dahlem, Tr. 759:20-25.*
Q. "When Ms. Miller had her stroke, what job did Ms. Fee do?"
A. "She took over Ms. Miller's job."
*Bello, Tr. 442:14-17.*

That testimony may support Plaintiff's position that she performed substantial or above-title duties. It does not establish that the decisionmakers acted because she is a woman. Neither Dahlem nor Bello made the Civil Service determination.

Schmidt's testimony supplied the classification basis for the decision. Civil Service reviewed the application, considered an onsite investigation, compared Plaintiff's duties with the title specifications, and concluded that she was working within the Laborer I title. Plaintiff worked alone, but she supervised no employees. The Storeyard Crew Chief title involved substantial supervisory responsibility.

The comparator evidence does not fill the gap. Sharma held a different skilled title and never worked with Plaintiff. Bello had decades of seniority, specialized mechanical training, heavy-truck and equipment experience, road-crew work, and supervisory duties. Foley had CDL, road, equipment, and formal supervisory responsibilities. Wilson, the closest comparison because he was also a Laborer I, remained in that title for approximately fourteen years before promotion.

The record also does not identify an open Storeyard Crew Chief vacancy, a male candidate selected over Plaintiff, or a male Laborer I who obtained the requested title through the same desk-audit process under materially similar circumstances. The challenged process was not a competition in which Plaintiff lost an available position to a man. It was a Civil Service review of whether her existing duties required a different title.

Even if a jury could disagree with Schmidt's classification conclusion, disagreement with a personnel decision is not, without more, evidence that sex was the actual reason.

Hence, the Defendants requests the Court to enter judgment on the Title VII gender-discrimination, reclassification or failure-to-promote, and unequal-terms theories.

## VII. DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE NYSHRL GENDER-DISCRIMINATION AND HOSTILE-WORK-ENVIRONMENT CLAIMS.

The NYSHRL's broader standard still requires proof that Plaintiff was treated less well because of gender. No decisionmaker made a gender-based statement. The proposed comparators had materially different titles, seniority, education, qualifications, field experience, equipment responsibilities, and supervisory duties. Civil Service supplied a duty-based and title-based explanation, and no equivalent male was shown to have received the requested title through the same process.

Individual liability must be tied to actual participation. No evidence showed that Toscano, Fanizzi, Foley, or Ferguson participated in, encouraged, or condoned McClenic's alleged sexual conduct. Conversely, no evidence showed that McClenic participated in the title determination or road assignment.

As to employer responsibility for the alleged harassment, McClenic was a coworker, the Town maintained a policy and complaint procedure, Plaintiff received training, she acknowledged available complaint avenues, and she did not establish timely notice followed by an inadequate response. Hence, the Defendants requests the Court to enter judgment on the NYSHRL gender-discrimination and hostile-work-environment claims and for each individual defendant as to any theory lacking proof of actual participation.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their renewed motion for judgment as a matter of law and resolve the unsupported claims before they are submitted to the jury. Defendants request judgment on the Equal Pay Act claim; the Section 1983 sexual-harassment claim against McClenic; the remaining Section 1983 discrimination and municipal-liability theories; the Title VII hostile-work-environment claim; the Title VII and NYSHRL retaliation claims, or at minimum their termination-based theories; the Title VII discrimination, failure-to-promote, reclassification, and unequal-terms theories; and the NYSHRL discrimination and hostile-work-environment theories. If the Court reserves decision on any portion of the motion, Defendants respectfully request that each ground stated above be deemed preserved under Rule 50(a).

Dated: Garden City, New York
July 14, 2026

Respectfully Submitted,

BERKMAN, HENOCH, PETERSON
& PEDDY, P.C.

By: Donna Napolitano
Donna A. Napolitano, Esq.
*Special Counsel to the Town Defendants*
Michael A. Markowitz, Esq.
Maria Janella Y. Loaiza, Esq.
*Of Counsel to Berkman, Henoch, Peterson and Peddy, P.C.*
400 Garden City Plaza, Suite 320
Garden City, New York 11530